UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD STURGIS,

      Petitioner,

v.

KATHLEEN OLSON, *Warden*,

      Respondent.

Case No. 17-12098
Honorable Laurie J. Michelson

---

## OPINION AND ORDER
## DENYING PETITION FOR A WRIT OF HABEAS CORPUS [1]

---

Donald Sturgis and Rhonda Ives were briefly engaged. But the relationship ended with Ives accusing Sturgis of domestic violence and Sturgis being put on probation. As soon as Sturgis' probation ended, he began contacting Ives and writing about her on the internet in a self-admitted payback campaign. But, in Sturgis' view, although he was getting back at Ives, he was doing so within the letter of the law. Law enforcement and, ultimately, a jury saw things differently, and Sturgis was convicted in state court of, among other crimes, aggravated stalking. In 2013, Sturgis was sentenced to prison for a minimum of five years and maximum of 35 years.

Sturgis now seeks a writ of habeas corpus from this Court. His pro se petition and reply brief are very lengthy, disorganized in places, and contain many claims and subclaims. The Court has attempted to identify and examine them all. Having done so, the Court will deny Sturgis' petition.

## I.

## A.

At Sturgis' trial, Ives testified about how her relationship with Sturgis started and ended. According to Ives, the two met on an internet dating site, dated "for a few months, and then . . . were engaged for a short while." (PageID.730.)[1] Ives testified that in November 2008, while on the small island Sturgis owns, Sturgis assaulted her and that she ended the relationship. (PageID.730.) Ives stated that Sturgis was convicted of domestic violence and placed on probation; Ives told the jury that Sturgis was not permitted to contact her during the probation period. (PageID.732, 766.) Even so, said Ives, Sturgis blogged about her and was found in contempt of court. (PageID.766.) Sturgis' probation ended on December 4, 2010. (PageID.733.)

According to Ives, Sturgis began harassing her as soon as his probation was over. The very day Sturgis' probation ended, Sturgis called and left her a voicemail. (PageID.733–734, 742–743.) Ives recalled that on the next day (December 5, 2010), she got an email with the subject, "Don's Christmas Gift to himself. Fuck you Rhonda." (PageID.1964.) The email stated in part, "Did you think you were going to totally fuck me over and I was just going to put my tail between my legs and whimper off . . . ?" (*Id.*) Attached to the email was a six-page letter; the filename was "Don's Christmas wishFINAL list." (PageID.741.) Ives testified that in that letter, Sturgis indicated that he had visited her 86-year-old mother. (*Id.*) Ives, an attorney, also testified that she saw copies of the same letter at the court where she practiced and at the local prosecutor's office; in fact, two judges showed her the copy of the letter they had received. (PageID.734.) Ives testified that about

---

[1] Unless indicated otherwise, all record citations are to the Rule 5 materials found at ECF No. 16.

a week later (on December 11, 2010), Sturgis sent a "This is beautiful" email to her that attached pictures of her engaged in sexual conduct. (PageID.734, 737–738.)

According to Ives, Sturgis' campaign continued into 2011. Ives recalls searching her name on Google in January 2011 and finding blog posts about her that Sturgis had authored. (PageID.739.) A January 30, 2011, blog post by Sturgis read in part, "Yes, I do have a chip on my shoulder. I will do what it takes legally upfront and not behind anyone's back. When I got off probation, I called her and left a message. It said when the world starts falling down around you, I want *you* to know it was me who made it happen." (PageID.797; ECF No. 1, PageID.186.) Ives testified that on March 2, 2011, Sturgis authored a blog post that included 14 pictures, some of which showed her nude or engaged in sexual conduct. (PageID.740.) Ives testified that Sturgis posted "links to [his] vile blogs," including on a local theater's website, a local radio station's website, and the local newspaper's website. (PageID.738–739.)

Detective Carol Liposky, a certified computer forensic examiner, also testified at Sturgis' trial. Lipsoky said she examined Sturgis' computer and found the sexually explicit photographs of Ives that were attached to the "This is beautiful" email. (PageID.801–802.) Liposky also recovered evidence of Google searches for "Rhonda Ives" from Sturgis' computer. (PageID.793–796). Liposky further testified that she found drafts of the "Christmas wishlist" letter that Sturgis sent to Ives, the prosecutor, and the two judges. (PageID.798.)

Sturgis testified at trial and told the jury his side of the story. Sturgis denied posting any nude or sexually explicit pictures of Ives on the internet for public access (PageID.841); he explained that he had placed sexually explicit pictures on a "private album" on one of the blog websites and that the album was password-protected. (PageID.830.) Sturgis asserted that Ives had the password because "the police . . . gave her my laptop twice." (PageID.830.) Sturgis admitted

3

that he called Ives the day after his probation ended. (PageID.833, 837.) Sturgis explained that once his probation was over, there was no longer any legal impediment to contacting Ives. (PageID.837.) Sturgis also admitted that he sent Ives the "This is beautiful" email (PageID.838) and that he sent the "Christmas wish list" letter to the prosecutor and two judges (PageID.834; *see also* PageID.846). Sturgis indicated that the two judges and prosecutor were either friends or acquaintances, and he explained that because Ives had indicated that she wanted to campaign for a local judgeship, he "wanted to let the people in her town know what they were getting." (PageID.834.) Sturgis also told the jury that he believed his blog posts or other communications about Ives were lawful because they were truthful: "This is America. You can say whatever you want to as long as it's the truth. It's free speech." (PageID.835.)

Upon hearing the testimony from Ives, Liposky, and Sturgis, and upon considering other evidence, a jury convicted Sturgis of four offenses: unlawfully posting of a message with aggravating circumstances, use of a computer to commit a crime of unlawful posting, aggravated stalking, and use of a computer to commit aggravated stalking. (PageID.871.) Sturgis, a fourth habitual offender, was sentenced to 5 to 35 years on each offense, with all sentences to run concurrently. (PageID.1179.) (Sturgis became eligible for parole over two-and-half years ago, in October 2017.)

**B.**

Sturgis appealed his convictions and sentence. His appellate counsel raised two claims of error and, via a pro per brief, Sturgis raised four more. The Michigan Court of Appeals rejected all grounds for appeal and affirmed the convictions and sentence. *People v. Sturgis*, No. 314821, 2014 WL 4160244 (Mich. Ct. App. Aug. 21, 2014). Sturgis then sought leave to appeal from the

Michigan Supreme Court, but that Court was "not persuaded that the questions presented should be reviewed." *People v. Sturgis*, 861 N.W.2d 37 (Mich. 2015).

In 2015, Sturgis sought relief from federal court. *Sturgis v. Place*, No. 15-11682 (E.D. Mich. filed May 11, 2015). This Court dismissed Sturgis' petition for a writ of habeas corpus because Sturgis had raised numerous unexhausted claims and there was still time and means for Sturgis to exhaust those claims. *See Sturgis v. Place*, No. 15-11682, 2016 WL 795889, at *3 (E.D. Mich. Feb. 29, 2016).

In 2017, Sturgis returned to federal court with a new petition. Apparently having presented all of his claims (the Warden does not assert that any are unexhausted), Sturgis again asks for a writ of habeas corpus.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). If a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III.

Although Sturgis numbers his claims for a writ in different ways, and while some of his claims are, in fact, multiple claims, roughly speaking, Sturgis raises eight bases for a writ of habeas corpus. (*See* ECF No. 1, PageID.5, 27, 29. 31, 88, 122, 203, 214, 233, 241, 257.)[2]

## A.

In claim "VII," Sturgis complains that the trial court erred in denying him the right to present a free-speech defense. (ECF No. 1, PageID.203, 257.)

Some additional background is necessary to appreciate this claim. Before trial, the prosecution moved to prevent Sturgis' counsel from raising the concept of "protected speech" in front of the jury. (PageID.705.) In addressing this issue, the judge stated that he would give Sturgis' counsel "a little leeway" but that "this isn't a free speech case" and "the jury doesn't know what . . . free speech is." (PageID.705.) The issue arose again at the end of trial. (PageID.787.) Some, perhaps all, of the charges against Sturgis required a showing of "harassment," which, under Michigan law, excluded "constitutionally protected activity or conduct that serves a legitimate

---

[2] Sturgis confusingly refers to both "Issue 1" through "Issue 7" and claims "I" through "VIII." (*Compare* ECF No. 1, PageID.2–4, *with* ECF No. 1, PageID.5, 10–11.) This is apparently a byproduct of Sturgis reusing parts of his various state court filings and his prior petition for habeas corpus to form the current petition for habeas corpus. After spending considerable time to parse Sturgis' 326-page petition and very lengthy reply briefs, the two sets of claims appear to map onto one another as follows: claim "I" is "Issue 3"; claim "II" is also "Issue 3"; claim "III" is "Issue 1"; claim "IV" is "Issue 4"; claim "V" is also "Issue 4"; claim "VI" is "Issue 6"; claim "VII" is "Issue 5"; and claim "VIII" is "Issue 2."

The arguments for these claims are scattered throughout Sturgis' lengthy petition and reply briefs and intermingled in the arguments are various exhibits and state-court filings; roughly, claims I to III are found at PageID.27–86, claim IV begins at PageID.122, claim V begins at PageID.233, claim VI is found at PageID.214 and, again, at PageID.241, claim VII is found at PageID.203 and, again, at PageID.257, and claim VIII is found at PageID.88 (labeled as "Issue#Two").

The Warden has tracked Sturgis' roman numeral "I" through "VIII" and so this Court will too.

purpose." Mich. Comp. Laws § 750.411h(c). Sturgis' counsel advocated for the exclusion to be part of the jury instructions. (PageID.787.) The trial court denied the request: "the jury is not to be deciding whether or not the speech is constitutional. The question is does the prosecutor prove each element. . . . What I've ruled [on] is [that the question of] whether or not something is constitutional is a question of law. And if you are committing a crime, it's not constitutionally protected. The question is, has the prosecutor proven that a crime is being committed." (PageID.814.)

With that background, Sturgis' claim can be better understood. He says that the trial court erroneously prevented him from presenting a constitutionally-protected-speech defense and even precluded him from using the term "free speech." (ECF No. 1, PageID.203, 257.) He also argues that the trial court erroneously excluded a jury instruction on constitutionally protected speech. (ECF No. 1, PageID.203.)

As an initial matter, the trial court did not wholly preclude Sturgis from raising a free speech defense. True, as Sturgis points out, the trial court stated that "this [was not] a free speech case" and that "[it was] not a constitutional case." (PageID.705.) But during opening statements, Sturgis' counsel was able to introduce the concept to the jury: "We're going to ask you to take a look behind the facts and the statement. Take a look and see whether or not any of this is protected speech. . . . If his contents in his blog were protected under freedom of speech, it's our expectation that you're . . . going to be directed that you can't use that as part of harassment." (PageID.727.) And Sturgis, without interruption from opposing counsel or the judge, testified about free speech: "Q. Now, in your blog you made several references to issues associated with the truth will set you free and within the law. Why did you make those references? A. Because I always felt that America was founded on freedom of speech, and you could say whatever you want to as long it's the truth.

7

If it isn't the truth and you embellish, you're liable to be sued and not be charged with felonies." (PageID.834.) Sturgis also told the jury: "This is America. You can say whatever you want to as long as it's the truth. It's free speech." (PageID.835.) Thus, it is not true, as Sturgis claims, that he was denied "the right to use the term free speech in his trial." (ECF No. 1, PageID.207, 209.)

That said, it seems that Sturgis' more general point is that he was not able to put on a *complete* free speech defense because, before testimony, the judge limited counsel's ability to present the concept to the jury and, after testimony, refused to instruct the jury that "harassment" under Michigan law did not include "constitutionally protected activity."

A premise of Sturgis' argument is that it was for the jury to decide whether his activity— the emails and blog posts—was constitutionally protected. But the Michigan Court of Appeals thought that question was one for the trial court: "In the present case, the trial court correctly determined that constitutional protection of Sturgis's conduct was a question of law for the court, not a question of fact for the jury." *Sturgis*, 2014 WL 4160244, at *2 (citing *Dennis v. United States*, 341 U.S. 494, 513 (1951) (plurality)). Sturgis has not cited a single case holding that the question of whether his conduct was constitutionally protected is a question of fact for the jury. So Sturgis has not shown that the Michigan Court of Appeals' determination was contrary to or an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

Although unclear, Sturgis also hints that even if it was for the trial court to decide whether his conduct was protected by the Constitution, the trial court decided the matter incorrectly. But if this is Sturgis' argument, he has not shown that the trial court erred. Sturgis repeatedly argues that the things he said about Ives were true. But while truth is a defense to a defamation claim, Sturgis cites not one case where truth prevented a conviction for stalking or unlawfully posting a message—the crimes for which he was convicted. Sturgis does cite *Elonis v. United States*, but

that opinion only assessed the mental state required for communicating a threat under a federal criminal statute; the Court expressly stated, "Given our disposition, it is not necessary to consider any First Amendment issues." 135 S. Ct. 2001, 2012 (2015). In short, Sturgis has not carried his burden of showing that the trial judge wrongly decided that his conduct was not protected by the First Amendment.

Because Sturgis was allowed to reference "free speech" and the First Amendment at trial, because he has not shown that the question of constitutionally protected conduct needed to be submitted to the jury, and because he has not shown that the trial judge wrongly found that his conduct was not constitutionally protected, Sturgis is not entitled to a writ on claim "VII."

**B.**

In claim "VI," Sturgis argues that the trial court incorrectly scored an offense variable, and thus, his prison sentence is too long. (ECF No. 1, PageID.241–250.) At sentencing, the prosecution argued that Offense Variable ("OV") 19 should be scored at a 10 (PageID.882); OV 19 permits scoring at a 10 when the defendant has "interfered with or attempted to interfere with the administration of justice," Mich. Comp. Laws § 777.49(c). In part, the prosecution argued that Sturgis had interfered with the administration of justice by violating an order not to contact Ives. (PageID.882–883.) Sturgis argues that this was factually incorrect. (ECF No. 1, PageID.242.) Sturgis explains that there was an attempt to serve him with a restraining order in January 2011, but that he could not be served because he was on his island and the deputy would not venture out onto the ice to get to the island. (ECF No. 1, PageID.242.) Sturgis states that the order was taped to one of his vehicles and that he did not see it until later. (ECF No. 1, PageID.241–242.) And, Sturgis adds, he complied with the terms of the personal protective order ("PPO") because the order did not say that he could not write about Ives online. (ECF No. 1, PageID.242.)

Sturgis' claim that OV 19 was incorrectly scored does not warrant a writ of habeas corpus. Generally speaking, "any challenge to the sentencing calculation under state law is not cognizable in federal habeas proceedings." *Gunn v. Burton*, No. 19-1077, 2019 WL 7602327, at *3 (6th Cir. July 30, 2019) (*citing Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000)); *see also Brown v. Nagy*, No. 19-1847, 2019 WL 7761722, at *3 (6th Cir. Dec. 16, 2019); *Holloway v. Campbell*, No. 19-1458, 2019 WL 5576346, at *3 (6th Cir. Aug. 30, 2019). True, an incorrect scoring can be so unfair as to deprive a defendant of his rights under the Due Process Clause. *See Gunn*, 2019 WL 7602327, at *3. But Sturgis has not shown that is the case here. Even assuming he is correct about the service of the PPO and his compliance with it, the judge scored OV 19 at 10 for additional reasons: "the faxing to judges was an attempt to influence judges against an attorney. I believe the elaborate scheme by the defendant in trying to hide the files and pictures that Judge Langford-Morris told him to get rid of was an interference more than just with the court order." (PageID.884–885.) And the Michigan Court of Appeals stated, "While there was conflicting testimony regarding the circumstances under which Sturgis received notice of the PPO, the trial court's remaining reasons for scoring 10 points for OV 19 are supported by the record." *Sturgis*, No. 2014 WL 4160244, at *3. Sturgis has not shown that this determination was based on an unreasonable determination of the facts. *See* 28 U.S.C. §§ 2254(d)(2), 2254(e)(1).

Accordingly, Sturgis is not entitled to a writ based on claim VI.

## C.

In claim "III," Sturgis argues that the criminal laws he was found to have violated are invalid. (ECF No. 1, PageID.31–49.) In particular, Sturgis claims that the Michigan Constitution requires that each law start with "The People of the State of Michigan enact"; Sturgis says that while the Public Acts corresponding to his crimes do contain the enacting language, when the

Public Acts were incorporated into the Michigan Compiled Laws, the enacting language was not included. (ECF No. 1, PageID.33 (citing Mich. Const. art IV § 23).) And, says Sturgis, another provision of the Michigan Constitution requires that the laws be compiled "without alteration." (*Id.* (citing Mich. Const. art IV, § 36).) In support of his claim that he was convicted for violating invalid laws, Sturgis cites *People v. Dettenthaler*, 77 N.W. 450 (Mich. 1898), a case where a conviction for selling imitation butter was overturned because the Michigan Senate passed the law without the enacting language.

Sturgis asserts a violation of state law—that the laws he violated themselves violate the Michigan Constitution. And the case law is clear that a federal court cannot grant a writ of habeas corpus for a mere violation of state law. *See, e.g.*, *Smith v. Harris*, No. 19-3902, 2020 WL 1481617, at *2 (6th Cir. Feb. 20, 2020). Some courts have even applied that rule to the same, or very similar claim that Sturgis makes. *See, e.g.*, *George v. Floyd*, No. 2:19-CV-13485, 2019 WL 6733027, at *2 (E.D. Mich. Dec. 10, 2019); *Weaver v. Ludwick*, No. 2:09-CV-10018, 2009 WL 117629, at *2 (E.D. Mich. Jan. 16, 2009).

But this does not completely resolve Sturgis' claim. If Sturgis was convicted of an invalid law, that could be a violation of federally guaranteed due process.

That said, the Court appreciates that federal courts deciding habeas corpus petitions should be reluctant to decide issues of state law in the first instance. Fortunately, that is not the situation here. Both the Michigan Court of Appeals and the Michigan Supreme Court denied Sturgis leave to appeal the denial of his motion for relief from judgment, and neither provided reasons for why Sturgis' enactment-clause claim lacked merit. *See People v. Sturgis*, No. 333606 (Mich. Ct. App. Dec. 21, 2016) (PageID.1805); *People v. Sturgis*, 894 N.W.2d 49 (Mich. 2017). In that situation, federal courts are to "look through" these unexplained decisions to the last reasoned state-court

decision. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Here, in denying Sturgis' motion for relief from judgment, the state trial court stated,

> Contrary to Defendant's argument, an enacting clause identical to that required by our Constitution prefaces the Michigan Penal Code, MCL 750.1 et seq., as well as the public act proscribing fraudulent access to computers, computer systems, and computer networks, MCL 752.795 et seq., and the Code of Criminal Procedure, MCL 760.1 et seq., in which the relevant statutes are contained. Furthermore, this Court is not persuaded by Defendant's argument that every section of a public act must contain the enacting clause.

(PageID.1117–1118.)

That "on the merits" adjudication is entitled to deference. *See* 28 U.S.C. § 2254(d). And Sturgis has not shown that the state trial court's factual determinations about the enacting clause are unreasonable. *See* 28 U.S.C. § 2254(d)(2). Nor has he identified any U.S. Supreme Court decision finding a statute unconstitutional because the version of the statute found in a compilation of laws lacked an enacting clause or any Supreme Court case that being convicted under such a law would violate due process. *See* 28 U.S.C. § 2254(d)(1). This Court thus cannot grant Sturgis a writ on his enacting-clause claim.

Also in claim III, Sturgis argues that the statutes he violated were invalid for another, related reason. He points out the Michigan Constitution contains a provision that states, "No law shall embrace more than one object, which shall be expressed in its title." (ECF No. 1, PageID.34–36 (citing Mich. Const. art IV, § 24).) And, according to Sturgis, the laws he violated embraced more than one object. (*See id.*)

The state trial court addressed this claim too. It said in part, "A violation [of the Title-Object Clause of the Michigan Constitution] exists only where the law contains subjects so diverse that they have no necessary connection. A review of the relevant statutes shows that, while the statutes may describe several different ways of committing an offense, the provisions of each

statute directly relate to the objects of the statutes." *People v. Sturgis*, No. 12-240961, slip op. at 5 (Mich. 6th Cir. Ct. May 11, 2016) (citations omitted) (PageID.1119).

Instead of demonstrating why the trial court's adjudication of his Title-Object Clause claim was based on unreasonable factual determinations or unreasonable application of U.S. Supreme Court precedent, 28 U.S.C. § 2254(d), Sturgis' petition merely replicates the arguments he made to the state trial court (ECF No. 1, PageID.34–36). So this Court cannot grant Sturgis a writ based on any Title-Object Clause violation.

Claim "III" does not warrant a writ of habeas corpus.

### D.

In claim "VIII," Sturgis argues that defects in pretrial papers rendered the trial court without jurisdiction. (ECF No. 1, PageID.88.) He asserts that the complaint, warrant, and information were not on "[s]tate approved" forms (PageID.88), that the complaint and warrant lacked "[f]iling insignia" and an endorsement by the court clerk (PageID.89), that the complaint did not establish probable cause for an arrest warrant (PageID.90), that the complaint was not notarized by jurat certification (PageID.92), that the police failed to sign and certify the warrant return (PageID.93), that the complaint did not delineate the multiple charges (PageID.94), and that the return on the information was improperly filed, lacked facts necessary to infer a felony, and was not properly certified (PageID.95).

To the extent that any of these assertions are a claim of unlawful arrest, this Court cannot grant Sturgis a writ of habeas corpus on such a claim. *See United States v. Crews*, 445 U.S. 463, 474 (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."); *accord Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).

13

As for the other issues with the complaint, warrant, and information that Sturgis says deprived the trial court of jurisdiction, the Warden thinks that these issues are not grounds for granting a writ of habeas corpus. (ECF No. 15, PageID.453 (asserting that Sturgis' complaints about forms are not a "cognizable basis for federal habeas relief").) In the Warden's view, Sturgis merely asserts that the complaint, warrant, and information do not comply with a state law or a state court rule, and, as such, they cannot be grounds for issuing a writ of habeas corpus. (*See id.*)

Even setting aside that one of Sturgis' claims about the complaint appears to be grounded in federal law (*see* ECF No. 1, PageID.94), the Court has doubts about the Warden's blanket rule that a writ of habeas corpus can never be granted on a claim that the state trial court lacked jurisdiction under state law. *See Lowery v. Estelle*, 696 F.2d 333, 337 (5th Cir. 1983) ("An absence of jurisdiction in the convicting court is, as Lowery claims, a basis for federal habeas corpus relief cognizable under the due process clause."); *U.S. ex rel. Herrington v. Mancusi,* 415 F.2d 205, 208–09 (2d Cir. 1969) ("It has long been settled that habeas corpus relief is available to a defendant convicted by a court without jurisdiction.").

That said, the Court does not believe that Sturgis' particular jurisdiction claims warrant habeas corpus relief. Sturgis has not shown that, as a general matter, the Oakland County Circuit Court lacked authority to try, convict, and sentence a defendant on charges of unlawfully posting a message with aggravating circumstances, use of a computer to commit a crime of unlawful posting, aggravated stalking, and use of a computer to commit aggravated stalking. *See Mancusi*, 415 F.2d at 209 ("Concededly, the [state trial] courts have jurisdiction to prosecute murder, attempted murder, sodomy and incest, the only matter in dispute being which state court had jurisdiction in these instances."). Sturgis merely argues that some formalities for warrants, informations, and complaints were not met in his particular case and so the Oakland County Circuit

Court lacked jurisdiction over his particular case. But if that court had jurisdiction to adjudicate the charges as a general matter, and Sturgis' trial and sentencing followed a fundamentally fair process, then the alleged defects in the warrants, informations, and complaints would not warrant a writ of habeas corpus. *See Mancusi*, 415 F.2d at 209 ("Even were we to hold that the [state trial court] had no jurisdiction under state law, petitioners would not be entitled to relief under the due process clause unless we also found that this lack of jurisdiction constituted such a fundamental unfairness in petitioners' trials that their convictions could not stand.").

That almost resolves claim III. But as noted above, one of Sturgis' claims appears to be grounded in federal law. In particular, he cites *United States v. Rodriguez-Gonzales*, 358 F.3d 1156, 1159 (9th Cir. 2004), and *United States v. Danielczyk*, 788 F. Supp. 2d 472, 477 (E.D. Va. 2011), apparently for the proposition that each count in an indictment must be treated as a separate indictment and must "stand or fall on its own allegations." *Rodriguez-Gonzales*, 358 F.3d at 1159. Sturgis argues that his complaint contained multiple counts (both felonies and misdemeanors) and that there were "absolutely no factual allegations" differentiating the counts. (ECF No. 1, PageID.94.)

This argument does not warrant a writ of habeas corpus. The Court does agree with Sturgis that the counts as pled in the complaint are conclusory. (ECF No. 1, PageID.106–11.) But the complaint presented the counts separately, provided the elements of each offense, and stated the dates the offenses occurred (December 14, 2010 to April 27, 2011 for four counts and December 4 through December 11, 2010 for a fifth count). (*See* ECF No. 1, PageID.106, 109.) Thus, Sturgis has not shown that his complaint did not "contain[] the elements of the offense intended to be charged" or did not "sufficiently apprise[] [him] of what he must be prepared to meet" or did not

15

specify his conduct in a manner that allowed him to assert double jeopardy. *See Russell v. United States*, 369 U.S. 749, 764 (1962); *Danielczyk*, 788 F. Supp. 2d at 477.

In short, Sturgis' arguments in claim "VIII" do not justify a writ of habeas corpus.

### E.

In claim "II," Sturgis also argues that his appellate counsel was constitutionally ineffective. In particular, Sturgis faults his appellate counsel for not raising numerous claims on direct appeal. (ECF No. 1, PageID.29, 97; ECF No. 17, PageID.2072, 2104; ECF No. 20, PageID.2176.)

To establish a Sixth Amendment violation based on appellate counsel's representation, Sturgis must make two showings. First, he must show that his appellate counsel's performance was deficient. And appellate counsel is not deficient simply because he does not raise a claim. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). And even if effective appellate counsel would have raised a particular claim, Sturgis must make a second showing to establish a Sixth Amendment violation: he must show that had the claim been raised, there is a "reasonable probability" that the Michigan Court of Appeals (or the Michigan Supreme Court) would have vacated his conviction. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Sturgis has made neither showing.

Start with Sturgis' claims that his criminal complaint, warrant, and information violated state rules or laws; he thinks that appellate counsel should have brought those violations of state

law to the attention of the Michigan Court of Appeals. (ECF No. 1, PageID.97.) Sturgis says that the forms for a criminal complaint, warrant, and information provided by the State of Michigan were not used in his case. But he cites no law indicating that a conviction is invalid simply because a standardized form was not used. (*See* ECF No. 1, PageID.88–89.) The same is true of his claim that his complaint and warrant lacked a date stamp and endorsement by the clerk of court—he cites no law indicating that those alleged defects result in an invalid conviction. (ECF No. 1, PageID.89.) And even assuming, as Sturgis claims, that the affidavit for his arrest warrant did not establish probable cause and that the warrant return was not signed and not certified (ECF No. 1, PageID.90, 93), it does not automatically follow that the conviction is invalid, *see Davis v. Rewerts*, No. 18-1822, 2018 WL 7050237, at *2 (6th Cir. Dec. 19, 2018); *Mackey v. Dickson,* 47 F.3d 744, 746 (5th Cir. 1995) ("It is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."). Sturgis also points out that his complaint lacked a notary's jurat certification; but, again, Sturgis cites no law establishing that the omission renders a conviction invalid. (ECF No. 1, PageID.92.) Finally, Sturgis argues that his complaint contained multiple counts (both felonies and misdemeanors) and that there were "absolutely no factual allegations" differentiating the counts. (ECF No. 1, PageID.94.) But this Court addressed that claim above and explained why it lacks merit. In short then, Sturgis has not shown that his claims about the complaint, warrant, or information were strong enough that competent appellate counsel would have raised them. So he has not shown that his counsel's failure to raise them was deficient performance. For similar reasons, Sturgis has not shown that had appellate counsel raised the alleged defects in the complaint, warrant, and information, there was a reasonable probability that the Michigan Court of Appeals would have vacated any of his convictions.

Sturgis also faults his appellate counsel for not raising claims based on the Enacting Clause and Title-Object Clause of the Michigan Constitution. (*See* ECF No. 1, PageID.5, 10, 29, 31–49.)

But, as discussed above, those claims were later rejected by the state trial court, and Sturgis has given this Court no good reason to think that the Michigan Court of Appeals would have ruled differently than the state trial court. So Sturgis has not shown that his claims based on the Michigan Constitution were strong enough that competent appellate counsel would have raised them; nor has he shown that had counsel raised the claims, there was a reasonable chance that the Michigan Court of Appeals would have declared the criminal statutes unconstitutional.

Although arguably only raised as an excuse for a procedural default, Sturgis says that his appellate counsel should have raised claims about Ives' perjured testimony and prosecutorial and judicial misconduct. (ECF No. 17, PageID.2072, 2104; ECF No. 20, PageID.2176.) According to Sturgis, his appellate counsel stated, "I refuse to bring such allegations against my colleagues" (apparently a reference to the fact that Ives, the prosecution, and the judge were all members of the State Bar of Michigan). (ECF No. 17, PageID.2104.)

But appellate counsel had no good reason to bring claims of perjured testimony or prosecutorial or judicial misconduct.

Take first the false statements that Sturgis claims Ives made. During her testimony, Ives stated that she did not know how Sturgis obtained a photo of her on a beach in St. Thomas (PageID.747); Sturgis says this is false as Ives sent him the photo from her phone (ECF No. 1, PageID.124). Sturgis also claims that Ives testified about or produced 11 pictures of her that he had allegedly circulated; but, says Sturgis, he only ever emailed five pictures. (ECF No. 1, PageID.124.) Sturgis also claims that Ives falsely told authorities that he had weapons and had stolen one of her hard drives. (ECF No. 1, PageID.233; *see also* ECF No. 16, PageID.732, 752.)

As an initial matter, Sturgis has not proven that any of the above statements by Ives were false. He faults Ives for not having corroborating evidence for her statements. (*See* ECF No. 1, PageID.124, 233.) But Sturgis has not offered the Court any such evidence backing his claim that the statements were false. (*See id.*) At most, Sturgis has created a "he said, she said" scenario with no way to break the tie.

But the bigger problem with Sturgis' claim is that Ives' allegedly false testimony, standing alone, was not grounds for appeal. A victim's false testimony, without more, is not appealable error—especially when, as here, the victim was subject to cross examination and the defendant testified and gave his account of what happened. Juries regularly decide whether to believe a victim or defendant.

Perhaps recognizing that false testimony, standing alone, is not grounds for appeal, Sturgis argues that both the prosecutor and judge knew Ives' testimony was false and yet still offered and allowed it (respectively). *See Rosencrantz v. Lafler*, 568 F.3d 577, 583 (6th Cir. 2009) (describing a "knowing-presentation-of-false-testimony claim"). But the only basis Sturgis has for claiming that the prosecutor and judge knew that Ives' testimony would be false are pretrial motions that Sturgis filed. (ECF No. 1, PageID.233; ECF No. 17, PageID.2074; ECF No. 20, PageID.2176.) He says that the pretrial motions gave the prosecutor and judge due notice of Ives' false testimony. (*See id.*) But the mere act of reviewing a pre-trial motion (the judge) or opposing a pre-trial motion (the prosecutor) in no way rises to the level of suborning perjury. Sturgis provides nothing to suggest that the judge or prosecutor even had these motions in mind while Ives was testifying.

Also, the Court has reviewed the pretrial motions that Sturgis has attached as part of this claim and they do not show that Ives' statements were false to the point where the prosecution and judge could not reasonably think they were true. (ECF No. 1, PageID.127–184.) Only two portions

of the motion even hint that Ives' evidence or testimony may have been fabricated. For one, Ives had claimed certain pictures of her were attached to a blog post, but, according to the motion, her claim could not be verified forensically. (ECF No. 1, PageID.132–33.) A pretrial motion also argued that Ives (or, perhaps, the prosecution) had indicated that there were 15 pictures associated with an email Sturgis sent but, forensically, only five pictures were associated with the email. (ECF No. 1, PageID.134.) These arguments merely show that some of Ives' testimony lacked corroboration or, at most, that there was some reason to doubt some of Ives' testimony. But the motions do not establish that the prosecution knew Ives' anticipated testimony was false or that the trial judge knowingly allowed false testimony. *See United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) ("The burden is on the defendant[] to show that the testimony was actually perjured, and mere inconsistencies in testimony by Government witnesses do not establish knowing use of false testimony." (internal quotation marks omitted)).

Sturgis also claims that half of the presentence report was false (ECF No. 1, PageID.236) and, apparently, thinks that appellate counsel should have raised that issue, too (*see* ECF No. 17, PageID.2072, 2104; ECF No. 20, PageID.2176). But this argument obviously would not have impacted the conviction. Much of the presentence report quotes from a sheriff's report, which, in turn, was based on Ives' account. (*See* ECF No. 1, PageID.195.) Sturgis disputes Ives' assertions to authorities that she needed to go to mental health counseling and that Sturgis took a picture of Ives' mother and emailed it to her. (ECF No. 1, PageID.122.) But, again, Sturgis has no documentary or like evidence proving these statements false—he only offers his competing account. More importantly, he has not shown that the prosecutor or judge knew these statements were false.

Sturgis also claims that the prosecution made false statements during trial and sentencing and thinks his appellate counsel should have brought those statements to the attention of the Michigan Court of Appeals. (*See* ECF No. 17, PageID.2072, 2104; ECF No. 20, PageID.2176.) He argues that after the jury heard the voicemail he left for Ives, the prosecutor falsely claimed that Sturgis had said, "If I can't have her no one will." (ECF No. 1, PageID.237.) He also says that the prosecution falsely stated that he had hired prostitutes. (ECF No. 1, PageID.233.) Sturgis also claims that the prosecution lied at sentencing when it argued that he tried to evade service of the PPO (when, in fact, he was on his island and the deputy would not venture across the ice to serve him). (ECF No. 1, PageID.235.)

These assertions of prosecutorial misconduct are not so strong that competent appellate counsel would have raised them. The trial transcript does *not* reflect that after the voicemail was played to the jury, the prosecutor stated, "If I can't have her no one will." (*See* PageID.735–736.) As for Sturgis' claim that the prosecution told the jury that he hired prostitutes, Sturgis does not cite the portion of the transcript capturing that statement and this Court was not able to find the alleged statement in the lengthy transcript. Finally, appellate counsel had no reason to challenge the prosecution's claim that Sturgis evaded service because, as noted above, the state trial court had other reasons for scoring OV 19 at 10 points. (PageID.884–885.) In all, Sturgis has not shown that his appellate counsel performed deficiently by not raising the prosecution's allegedly false statements on appeal; nor has Sturgis shown that had the statements been raised, there would have been a fair chance that the Michigan Court of Appeals would have vacated one of his convictions.

Sturgis also asserts that the judge who presided over his trial was biased and, apparently, believes that appellate counsel should have made that accusation to the Michigan Court of Appeals. (*See* ECF No. 1, PageID.235; ECF No. 17, PageID.2072, 2104; ECF No. 20, PageID.2176.)

But Sturgis' claims of bias are wholly conclusory. (*See* ECF No. 1, PageID.235.) So he has not shown that appellate counsel was ineffective for not raising a judicial misconduct claim or that, had the claim been raised, there would be a fair chance that the Michigan Court of Appeals would have credited it.

Finally, Sturgis says his appellate counsel was ineffective for not claiming that his trial counsel was ineffective. (ECF No. 1, PageID.10, 29; ECF No. 17, PageID.2104–2105.) Sturgis thinks his trial counsel should have objected to Ives' false testimony. (ECF No. 17, PageID.2105.) He also thinks that this trial counsel should have appealed the trial court's protected-speech ruling rather than allowing the trial to proceed. (ECF No. 17, PageID.2105; ECF No. 20, PageID.2176.) Sturgis faults his trial counsel for not raising the defects in the complaint, information, and warrant and for not asserting that the criminal statutes violated the Michigan Constitution. (*See* ECF No. 1, PageID.27, 97.) While far from clear, it appears that Sturgis thinks his appellate counsel was ineffective for not raising these ineffective-assistance-of-trial-counsel claims. (*See* ECF No. 1, PageID.10, 29; ECF No. 17, PageID.2104–2105.)

Sturgis has not shown that his appellate counsel's failure to raise these claims was deficient performance or prejudicial. Even if Ives made false statements on direct examination, that, by itself, would not have given trial counsel a legal basis to object. Moreover, trial counsel cross-examined Ives and solicited Sturgis' account of what happened when Sturgis testified. So the Court is hard-pressed to find any prejudice. As for trial counsel's failure to seek an interlocutory appeal, it was reasonable for appellate counsel to not bring an ineffective-assistance-of-trial counsel claim on that basis. Because appellate counsel raised the protected-speech claim directly, there was little reason to also raise the claim indirectly via an ineffective-assistance claim. In any event, the Michigan Court of Appeals ultimately rejected the protected-speech claim, so Sturgis has not

shown that the failure to bring an interlocutory appeal (or appellate counsel's failure to raise the issue) caused him prejudice. As for trial counsel's failure to challenge the court's jurisdiction (by raising defects in the complaint, warrant, and information or asserting that the criminal statutes violated the Michigan Constitution), the Court has already found that appellate counsel was not ineffective for failing to raise these claims directly. For similar reasons, appellate counsel was not ineffective for failing to raise these claims indirectly via an ineffective-assistance-of-trial-counsel claim.

In short, Sturgis has not shown his appellate counsel performed below the standard set by the Sixth Amendment. Nor has Sturgis shown that absent deficient performance, there would have been a reasonable probability that the Michigan Court of Appeals would have vacated one of his convictions or altered his sentence.

Claim "II" does not warrant a writ.

## F.

The Court addresses claims "I," "IV," and "V" together. In claims IV and V, Sturgis asserts that the prosecution and judge knew Ives would testify falsely, that the prosecutor made false statements, and that the prosecutor and judge engaged in misconduct—claims this Court just addressed in the context of Sturgis' ineffective-assistance-of-appellate-counsel claim. (*See* ECF No. 1, PageID.122–124, 233–237.) In claim I, Sturgis says that his trial counsel was ineffective in all the ways just addressed in resolving Sturgis' ineffective-assistance-of-appellate counsel claim. (*See* ECF No. 1, PageID.27, 97; ECF No. 17, PageID.2105; ECF No. 20, PageID.2176.)

The Warden says these claims are all procedurally defaulted. The Court agrees.[3]

---

[3] To the extent that a few of these claims are not defaulted because Sturgis' pro per brief on direct appeal raised them (frankly, it is difficult to tell) or because the state trial court did not

It appears that Sturgis did not raise the arguments on direct appeal that he now presents in claims I, IV, and V. (*See* PageID.1181–1206, 1215–1238.) Instead, it appears that he first raised them in a motion for relief from judgment after his direct appeal was complete. (*See* ECF No. 1, PageID.261–263.) (The Court uses the qualifier "appears" because it is difficult to determine the precise scope and legal basis for some of Sturgis' claims.) In deciding that motion, the state trial court found that the claims could have been raised on direct appeal and Sturgis did not have good reason for not doing so. (PageID.1119–1120), *People v. Sturgis*, No. 12-240961, slip op. at 5–6 (Mich. 6th Cir. Ct. May 11, 2016). In particular, the state trial court found that Sturgis needed to, but could not, satisfy Michigan Court Rule 6.508(D)(3). *Id.*

Federal habeas corpus courts honor adequate-and-independent state procedural rules. And Rule 6.508(D)(3) is such a rule. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012).

True, Sturgis can set aside the procedural bar by showing cause and prejudice. For cause, Sturgis blames his appellate counsel for not raising the claims on direct appeal. But this Court has already found that appellate counsel was not ineffective for not raising the issues in claim I, IV, and V on direct appeal; so Sturgis has not established cause. And Sturgis has not established cause for a second reason: he filed his own pro per brief on direct appeal and did not raise the arguments he now makes in claims I, IV, and V.

Apart from cause and prejudice, a habeas corpus petitioner can also clear a procedural bar by showing that there would be a "fundamental miscarriage of justice" if his claims are not heard by a federal court. *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). But this requires Sturgis to have "new reliable evidence showing that he is actually innocent." *Dufresne v. Palmer*, 876

---

find them defaulted, the Court has hopefully made clear throughout this opinion that none of these claims warrant habeas corpus relief.

F.3d 248, 256 (6th Cir. 2017). Sturgis has no such evidence. So he cannot clear the procedural bar this way either.

Accordingly, the Court finds that claims "I", "IV" and "V" are procedurally defaulted.

## IV.

For the reasons given, the Court DENIES Sturgis' petition for a writ of habeas corpus.

The Court does not believe a reasonable jurist would have granted Sturgis a writ on one of his claims. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). So the Court will not grant Sturgis a certificate of appealability.

But if Sturgis still chooses to appeal, he may do so without prepaying the filing fee. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: July 16, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 16, 2020.

s/Erica Karhoff
Case Manager to the
Honorable Laurie J. Michelson